## LaCaffinie v. PennDOT

*Richard A. Husband,* for petitioner.
*Gina M. D'Alfonso, assistant counsel,* for PennDOT.

FRANKS, *J.*, July 23, 1992—This is an appeal by Allan M. LaCaffinie from an order of the Pennsylvania Department of Transportation suspending his operating privilege for one year pursuant to 75 Pa.C.S. §1547. After hearing de novo, consideration of the testimony and the law, this court dismisses the appeal.

We further accept as our findings of facts, legal discussion and conclusions of law, those set forth in the able brief submitted on behalf of the Commonwealth of Pennsylvania, Department of Transportation as our own authority for our decision. A copy of said brief is attached hereto, is incorporated and made a part of this memorandum opinion as though fully set forth herein.

## ARGUMENT

This case involves a refusal by a motorist to submit to a chemical test of his blood after requested by a police officer who had arrested the motorist for DUI. In a motorist's appeal from a suspension of his operating privilege imposed under the implied consent law, the department must establish four elements in order to uphold the suspension: (1) that the motorist was arrested for violating 75 Pa.C.S. §3731; (2) by a police officer who had reasonable grounds to believe that the motorist was operating or in control of the movement of a motor vehicle while under the influence of alcohol or a controlled substance; (3) that the officer requested that the motorist submit to a chemical test; and (4) the motorist refused to do so. *Larkin v. Commonwealth,* 109 Pa. Commw. 611, 531 A.2d 844 (1987). Also, *when the issue has been raised by the motorist,* the department must also show that the officer fulfilled his duty under 75 Pa.C.S.

§1547(b)(2) and warned the motorist of the consequences of refusing the chemical test. *Ostrander v. PennDOT, Bureau of Driver Licensing,* 116 Pa. Commw. 243, 541 A.2d 441 (1988).

Of the four elements the department is required to prove, the two elements in dispute here are whether LaCaffinie refused to submit to chemical testing and whether he was properly warned of the consequences of such refusal.

Anything substantially less than an *unqualified,* unequivocal assent to chemical testing is a refusal. *PennDOT, Bureau of Traffic Safety v. Mumma,* 79 Pa. Commw. 108, 468 A.2d 891 (1983). *PennDOT v. Groscost,* 142 Pa. Commw. 36, 596 A.2d 1217 (1991). Furthermore, a refusal need not be expressed in words but can be implied from a motorist's actions. *PennDOT, Bureau of Traffic Safety v. Krishak,* 91 Pa. Commw. 307, 496 A.2d 1356 (1985). Delay tactics on the part of the motorist can constitute a refusal. See, e.g., *PennDOT, Bureau of Highway Safety v. O'Rourke,* 25 Pa. Commw. 580, 361 A.2d 496 (1976). As stated by the Superior Court in *Morris Motor Vehicle Operator License Case,* 218 Pa. Super. 347, 280 A.2d 658 (1971):

"Having in mind the remedial purpose of the statute and the rapidity with which the passage of time and physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.... The occasion is not one for debate, maneuver or ne-

gotiation, but rather for a simple 'yes' or 'no' to the officer's request." *Id.* at 350, 280 A.2d at 659-60.

Under the terms of section 1547(a) of the Vehicle Code, 75 Pa.C.S. §1547(a), a police officer may request a breath, blood or urine test from a motorist suspected of driving a vehicle in violation of section 3731 of the Vehicle Code, 75 Pa.C.S. §3731 (operating a vehicle while under the influence of alcohol and/or controlled substance). The choice of which chemical alcohol test the motorist is to perform is solely up to the officer, and not the motorist. *Craze v. PennDOT,* 111 Pa. Commw. 136, 533 A.2d 519 (1987), *appeal denied,* 518 Pa. 644, 542 A.2d 1372 (1988). The discretion given to a police officer to choose the type of chemical test given to the motorist by section 1547 has been held to pass muster under the U.S. and Pennsylvania Constitution. *Kostyk v. PennDOT,* 131 Pa. Commw. 455, 570 A.2d 644 (1990) (en banc).

LaCaffinie argues that his request for an assurance that he would not contract AIDS from submitting to a chemical analysis of his blood should not constitute a refusal. This position is in opposition with the law in this Commonwealth. In addition to the cases which have already been cited, the Commonwealth Court has specifically stated that the motorist's legitimate fear of AIDS as a result of the administration of a blood test does not excuse a refusal. *McCullough v. PennDOT,* 122 Pa. Commw. 415, 551 A.2d 1170 (1988).

Moreover, LaCaffinie's reliance upon the *PennDOT, Bureau of Traffic Safety v. Doherty,* 88 Pa. Commw. 482, 490 A.2d 481 (1985), is misplaced. *Doherty* is clearly distinguishable from this appeal. In *Doherty* the

motorist did not attempt to debate, maneuver or negotiate. The motorist in *Doherty* had already assented to a chemical test of his breath. Most importantly however, unlike the motorist in *Doherty*, LaCaffinie did not merely ask a question. In *Doherty*, the motorist asked whether he could call his lawyer. On the contrary, LaCaffinie's "question" was in fact a qualified and conditional assent to chemical testing. *To wit:* "I (LaCaffinie) will submit to testing, but you (the hospital staff) must provide me with some assurance that I will not get AIDS." Unlike the question posed in *Doherty*, LaCaffinie placed a qualification upon his willingness to submit to chemical testing (i.e. Doherty did *not* say "I will take the breath test, but you must give me some assurance that I can call my attorney first"). In fact, the *Doherty* court itself noted that this fact distinguished *Doherty* from the long line of suspension cases which deal with a motorist's demand to speak with an attorney prior to testing. *Doherty*, at 484, 490 A.2d at 482.

LaCaffinie also argues that the department's suspension should be invalid because of testimony which indicates his willingness to submit to another type of chemical test (e.g. breath or urine). It is well settled that the fact that the motorist may or did offer to submit to a chemical alcohol test other than the test requested by the officer will not enable the motorist to avoid the consequences of a refusal. See, e.g., *McCullough Pearson v. Commonwealth*, 122 Pa. Commw. 91, 551 A.2d 394 (1988); *Craze, Boger v. PennDOT*, 110 Pa. Commw. 512, 532 A.2d 892 (1987), *Wender v. Commonwealth*, 107 Pa. Commw. 20, 525 A.2d 1071 (1987); *PennDOT v. Curran*,

107 Pa. Commw. 1, 526 A.2d 1265 (1987); *Magill v. Commonwealth*, 104 Pa. Commw. 517, 522 A.2d 172 (1987); *PennDOT v. Bartle*, 93 Pa. Commw. 132, 500 A.2d 525 (1985). Therefore, the fact that LaCaffinie may have offered to take another type of test instead of the blood test requested by the officer is of no consequence. Such an offer is clearly not a defense to the suspension of the operating privilege imposed under 75 Pa.C.S. §1547 as a result of the motorist's refusal to submit to the type of test requested by the officer.

LaCaffinie cites *PennDOT v. Monohan*, 142 Pa. Commw. 36, 601 A.2d 489 (1991), for the proposition that he did not refuse to submit to a chemical test of his blood. The *Monohan* case is also distinguishable from the case sub judice. The motorist in *Monohan* wrote on the back of the police report "I will take any test that you want." On the contrary, although LaCaffinie testified that he would have submitted to a breath or urine test, LaCaffinie would not assent to a chemical test of his blood (i.e., the requested test).

In effect, what LaCaffinie was attempting to negotiate was a waiver of the hospital's immunity from civil liability provided to them by subsection (j) of section 1547, 75 Pa.C.S. §1547 (j). That provision, in pertinent part, states as follows:

"No physician, nurse or technician or hospital employing such physician, nurse or technician, and no other employer of such physician, nurse or technician shall be civilly liable for withdrawing blood or obtaining a urine sample and reporting test results to the police at the request of a police officer pursuant to this section."

The Commonwealth Court has never held that a motorist can require a hospital to waive the immunity provided by this statutory provision.

This court must not defeat the language or purpose of this provision (and the other provisions of the Vehicle Code) by affording a motorist the right to make his assent to chemical testing *qualified* or equivocal.

In accordance with the case law and legal argument presented above, the department respectfully submits that this court must reinstate the one year suspension of La-Caffinie's operating privilege pursuant to 75 Pa.C.S. §1547 as a result of his failure to give an unequivocal assent to chemical testing.

Hence, the following

### ORDER

And now, July 23, 1992, it is ordered, directed and adjudged that the appeal of Allan M. LaCaffinie is dismissed, and the one-year suspension of his motor vehicle operating privilege is reinstated as a result of his refusal to consent unequivocally to chemical testing of his blood.